# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TOWERCO 2013, LLC a Delaware
limited liability company,

       Plaintiff,             Case No.
                                 Hon.

vs.

TOWNSHIP OF CHICKAMING, a
Michigan municipal body,

       Defendant.

_____

# COMPLAINT

Plaintiff TOWERCO 2013 LLC ("TC"), by and through its attorneys, *Williams, Williams, Rattner & Plunkett, P.C.*, states for its Complaint against Defendant Township of Chickaming (the "Township") as follows:

# SUMMARY

This action arises from the Township's unlawful denial of TC's special land use and site plan approval applications (collectively the "Application") for the construction and operation of a wireless communications tower on real property located in the Township.

The Application was submitted pursuant to Section 6.50 Wireless Telecommunications of the Township Zoning Ordinance ("Ordinance"). The subject property is owned by the Tower Hill Camp Association (the "Landowner")

01886180.DOCX

and is located at 12173 Tower Hill Rd. (the "Property").  A portion of the Property is leased to TC (the "Leased Premises") pursuant to a Ground Lease Agreement with the Landowner for purposes of construction of a wireless communications tower.

The federal Telecommunications Act prohibits municipal ordinances to be applied to a proposed site if its application would have "the effect of prohibiting the provision of personal wireless services".  The Township's Ordinance, on its face and in its application to TC in this instance, bars TC from constructing facilities necessary to provide personal wireless communication services to consumers and businesses and public sector users in an area where there is an undisputed significant gap in wireless communication coverage, resulting in an "effective prohibition" of services prohibited by the Telecommunications Act.

The property at issue remedies very well the identified gap in coverage, and there were not available less intrusive alternative sites where a wireless communications tower could feasibly be located.  On May 1 and June 5, 2024 (collectively the "PC Hearing"), the Township Planning Commission held a public hearing on the Application and unanimously recommended approval of the Application to the Township Board.  On June 13, 2024 (the "Board Hearing"), the Township Board unlawfully approved a motion to deny the Application, and thus prohibited the provision of wireless services for the area to be served by the Leased

01886180.DOCX

Premises through the construction of a wireless communications tower.  The Township Board's decision was based solely on aesthetic concerns and an alleged lack of harmony with the surrounding area.  By denying TC's Application where a gap in coverage exists and less intrusive alternative site are not available, the Township violated the Telecommunications Act and TC's rights under the United States Constitution.

This dispute must be resolved in an expedited manner pursuant to 47 U.S.C. §332(c)(7)(B)(v).

## PARTIES, JURISDICTION, AND VENUE

1.     TC is a Delaware limited liability company, which does business in Berrien County, Michigan.

2.     The Township is a municipal body existing under the laws of the State of Michigan.

3.     TC has a legal interest in the Property pursuant to the Ground Lease Agreement. The Ground Lease Agreement was executed for the purpose of TC applying for special use and site plan approval from the Township and for the construction and operation of a wireless communications facility on the Property.

4.     This Court has original subject matter jurisdiction over the federal questions asserted herein pursuant to 28 U.S.C. §1331.

01886180.DOCX

5.      This Court's federal question jurisdiction arises under the Telecommunications Act of 1996 (the "Act"), specifically 47 U.S.C. §332, and the Constitutional-based laws of the United States.

6.      The actions or occurrences alleged in this Complaint occurred in Berrien County, Michigan. The Township is a Michigan municipal body located within this District; therefore, personal jurisdiction exists in this District.

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because: (i) the acts giving rise to the claims alleged herein occurred in this District; (ii) the claims involve property located within this District; and (iii) the Township is located in this District.

8.      TC is entitled to have this dispute heard and decided on an expedited basis pursuant to 47 U.S.C. §332(c)(7)(B)(v).

## FACTUAL BACKGROUND

### A.      Wireless Service Technology

9.      TC is a full-service nationwide tower development and co-location service provider for the United States wireless industry. TC builds wireless communications facilities and towers to suit wireless communication service providers' needs and manages a portfolio of existing towers and facilities.

10.     Several wireless communications service providers who are licensed by the Federal Communications Commission ("FCC") pursuant to 47 U.S.C. §151 approached TC seeking to co-locate their wireless communications equipment on

4

the tower that TC wishes to construct and operate on the Property.  These wireless communications service providers participated in the Application and public hearing process by submitting Radio Frequency ("RF") propagation maps and providing testimony in support of TC's Application in furtherance of their desire to co-locate on the proposed tower.

11.     Section 151 of the Act establishes a national policy to make available, so far as possible, to all people of the United States, . . . an efficient, nation-wide and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications . . . 47 U.S.C. §151.

12.     To meet the national policy goals enumerated under 47 U.S.C. §151, telecommunication providers must create and maintain a network of wireless communications facilities ("Tower(s)") to broadcast RF signals.

13.     The broadcasting range of Towers is no more than a few miles and can be less depending on various factors, such as equipment type, tower height, and topography.

14.     As of December 2018, wireless cellular communication is the primary means of telephone communication in the United States as more people own only a cell phone than those who have conventional telephone LAN lines.

01886180.DOCX

15.     In order to provide reliable service to their consumers, the coverage provided by wireless carriers must connect in a grid pattern resembling a honeycomb (i.e. "cellular" coverage").  Gaps in this grid cause gaps in cellular coverage, which depending on the severity can result in problems for consumers, businesses and public sector users ranging from dropped cellular calls to an inability to make/receive a call or text message or access the internet.

16.     If TC is denied the opportunity to construct a needed Tower within a specific geographic area where there is a coverage gap or co-locate wireless carriers on a suitable Tower in that area, then TC and the wireless carriers will not be able to provide an adequate level of federally-required personal wireless communication services to consumers within that area.

17.     TC and wireless carriers engage RF engineers who use complex computer programs and extensive field testing to generate propagation maps that indicate where additional Towers are needed to support the ever-increasing traffic on the network. These propagation maps are created using information from several different sources: publicly available data; the wireless carriers' own proprietary company data; data regarding the equipment and transition capacities of existing Towers; topographical factors relevant to specific areas; intervening structures relevant to specific areas; Tower-specific drive data; coverage

boundaries of neighboring facilities; and other limiting factors that may be applicable to a specific location or region.

18.     TC was engaged by certain wireless communications service providers to find a suitable site for a Tower to address a gap in cellular coverage in the Township.

19.     TC identified the Property as a suitable site to locate a Tower after extensively canvassing the surrounding area and determining that no other less intrusive alternative properties were feasibly available to address the demonstrated gap in wireless coverage.

20.     Here, the record includes extensive documentation and testimony from wireless communications service providers and RF engineers that established the need for a Tower to remedy an existing substantial gap in cellular coverage in the area around the Property.

21.     Based upon extensive research and analysis, there is a significant gap in cellular coverage and capacity (the "Gap") in the Township, specifically within the general area near the Property, and the proposed Tower would remedy the Gap. This information and RF propagation maps were submitted to the Township for consideration in conjunction with TC's Application.

22.     Prior to submitting its Application, TC identified other potential locations for a proposed Tower that would close the Gap, while taking into

01886180.DOCX

consideration the Township's Ordinance, but these locations, including within the Warren Dunes State Park, were not feasible or available.

23.    With cell phones as the primary means of phone communication, mobile phones are also critical to emergency response with more than 92% of 911 calls coming from a mobile phone.  Citizens visiting nearby Warren Dunes State Park have been unable in an emergency to make 911 calls from the only phone service available, their cell phones.  The proposed Tower will be a part of the AT&T FirstNet system, a nationwide first responder communication system, used by Berrien County as well.

24.    In order to close the Gap and meet the cellular and emergency usage demands of the Township's residents and businesses, public sector users, State Park users and other consumers, there is an urgent need for a new Tower within the Township at the Property.

**B.    The Township's Ordinance**

25.    The Township's Ordinance effectively prohibits construction and locating of Towers within the portion of the Township's boundaries that would address the Gap in coverage.

26.    The Ordinance generally permits wireless communication Towers and related equipment on the Property but only as a special use approved by the

01886180.DOCX

Township Board and TC's only reasonable option was the Property, but the Township denied the Application.

## C.     The Proposed Site

27.    The Property where TC seeks to build a Tower and related facilities is approximately 8.14 acres in size.

28.    TC intends to build the following improvements at the Property in connection with a proposed Tower: (a) an unmanned galvanized gray monopole wireless communications Tower, (b) a fenced compound area at the base of the Tower, and (c) related switching and electronic equipment at the base of the Tower serving the antennas on the Tower (collectively the "Proposed Tower").

29.     As shown in TC's Application, TC would lease space on the Proposed Tower to multiple wireless communications service providers.

30.    The Proposed Tower will be within the maximum permitted height under the Ordinance.

31.    The summary report of the Township Planning Department, by Kelly Largent, the Township Zoning Administrator, concluded that all Ordinance requirements were met, including all those for a wireless tower, a special land use permit and site plan approval.  The only exception was FAA and FCC permits, which TC confirmed would be supplied when obtained at a later date but before a building permit was requested.

9

32.     TC provided in its Application photo simulations that depict what the Tower will actually look like, once built, from multiple vantage points in and around surrounding properties. The simulations are not approximations but rather accurate computer projections based on on-site measurements and clearly show a minimal impact.

33.     The Property is a uniquely suitable location for the Proposed Tower because it will serve to close the Gap around the Property and its location is consistent with the requirements of the Act and the Ordinance.

**C.     The Zoning and Site Plan Review Process**

34.     On May 1 and June 5, 2024 the Township Planning Commission held a public hearing on the Application and unanimously recommended approval to the Township Board. On June 13, 2024, the Township Board unlawfully approved a motion to deny the Application, and thus prohibited the provision of wireless service for the area to be served by the Leased Premises through the construction of a wireless communications Tower.

35.     The Township Board's decision was based solely on aesthetic and health related concerns and an alleged lack of harmony with the surrounding area.

36.     By denying TC's Application where a gap in coverage exists and less intrusive alternatives are not available, for subjective reasons, rather than substantial evidence, the Township violated the Act.

01886180.DOCX

37.    TC's Application meets or exceeds all applicable standards under the Ordinance. The Township Zoning Administrator confirmed compliance with the Ordinance Requirements.

38.    TC's Application includes a narrative explanation as to the existence of the Gap and how the Tower would remedy it and included Radio Frequency (RF) Propagation maps from registered RF Engineers from wireless carriers as support.

39.    Members of the objecting public voiced opinions regarding aesthetic concerns, objections to the location, and that a Tower would broadcast harmful environmental effects and the Township Board relied exclusively on these comments and opinions to deny the Application. However, no evidence was presented to contest the existence of the Gap, the need for a Tower to remedy the Gap, or the unavailability of less intrusive alternatives that would completely address the Gap.

40.    Under *T Mobile Cent., LLC v. Charter Twp. of W. Bloomfield*, 691 F3d 794 (6th Cir. 2012), aesthetic concerns about a proposed tower cannot, on their own, constitute substantial evidence sufficient to bar construction of a Tower.

41.    The United States Court of Appeals for the Sixth Circuit held in *T Mobile Cent., LLC*, *supra*, that RF Propagation maps are appropriate and

01886180.DOCX

sufficient evidence to demonstrate the existence of a significant gap in a carrier's service coverage.

42.    TC and its representatives submitted unopposed evidence, including RF propagation maps, showing that a Gap exists in the area around the Property, that a Tower is needed at or very near the Property to remedy the Gap, that there were no other feasible locations that could remedy the Gap, and that the Proposed Tower met all of the Ordinance's requirements.

43.    As shown by the RF propagation maps that were included in TC's Application, the Proposed Tower is surrounded by yellow and red areas that show graphically in-the-field measured frequencies that were "poor" or "very poor" in coverage.

44.    The record also demonstrates that TC made a good faith inquiry into the feasibility of alternative, less-intrusive locations and determined that no available properties would (a) be available to lease, (b) remedy the Gap, and (c) comply with the Ordinance.

45.    Section §332(c)(7)(B)(iv) of the Act prohibits a municipality to support a denial "on the basis of environmental effects of radio frequency emissions" if the Tower complies with FCC emissions guidelines. The Proposed Tower complies with FCC emission guidelines. The Township Board unlawfully

01886180.DOCX

based its decision at least in part on opinions regarding the environmental effects of the Proposed Tower.

46.    Despite TC's Application meeting all local requirements of the Ordinance and all requirements of the Act, the Township did not approve TC's Application.

47.    Evidence from the Board Hearing further shows that the reasons for voting against TC's Application were not lawful under the Act, were based impermissibly on aesthetics and environmental effects and were arbitrary and capricious.

48.    Further, the Township did not provide written, lawful reasons for denying TC's Application and did not support its decision with substantial evidence in a written record.

49.    The Township did not find that TC failed to establish the existence of the Gap, and the Township did not find that TC failed to make a good faith, reasonable inquiry into alternative locations.

50.    Regardless of the Township's decision, there is significant need for increased Gap coverage capacity in the area surrounding the Proposed Tower and TC proved this through the presentation of substantial evidence on the record, including evidence that: (a) the Proposed Tower is necessary to address the coverage capacity issue posed by the Gap; and (b) there are no other potential sites

13

available within the target coverage and capacity area that are less intrusive while at the same time adequately addressing the Gap.

51.     There was not substantial evidence submitted in opposition to TC's Application or the existence of the Gap, and the comments presented by members of the public concerned only impermissible criteria.

52.     The comprehensive materials and other substantial evidence submitted by TC to the Township demonstrates that TC has met all the requirements under the Act and the Ordinance for approval of TC's Application, and that the Township violated the Act by denying the Application.

**COUNT I**
**VIOLATION OF THE FEDERAL COMMUNICATIONS ACT OF 1996:**
**FAILURE TO SUPPORT DENIAL WITH SUBSTANTIAL EVIDENCE IN**
**A WRITTEN RECORD**

53.     TC hereby incorporates by reference the foregoing paragraphs as though fully set forth herein.

54.     The Act comprehensively addresses this nation's telecommunications policy and the development of Towers to provide telecommunications services throughout the United States.

55.     The stated purpose of the Act is to "promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the deployment of new telecommunications technologies." (Preamble to the Act).

01886180.DOCX

56.     The Act provides, in pertinent part:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. 47 U.S.C. §332(c)(7)(B)(v).

57.     The Act further provides, in pertinent part:

> Any decision by a State or local government or instrumentality thereof to **deny** a request to **place, construct or modify** personal wireless service facilities **shall be in writing and supported by substantial evidence contained in a written record**. 47 U.S.C. §332(c)(7)(B)(iii) (emphasis added).

58.     The denial of TC's Application, through the actions of the Township, was not supported by permissible or substantial evidence presented to or by the Township or provided in a written record.

59.     There was no lawful written record of the alleged evidence supporting the decision.

60.     Therefore, the denial of TC's Application violates the Act.

## COUNT II
## VIOLATION OF FEDERAL TELECOMMUNICATIONS ACT OF 1996: ACTUAL OR EFFECTIVE PROHIBITION OF PERSONAL WIRELESS SERVICES

61.     TC hereby incorporates by reference the foregoing paragraphs as though fully set forth herein.

15

01886180.DOCX

62.     The Act provides, in pertinent part, that a state or local government or instrumentality "shall ***not prohibit or have the effect of prohibiting*** the provision of personal wireless services." 47 U.S.C. §332 (c)(7)(B)(i)(II) (emphasis added).

63.     The denial of TC's Application prevents the closing of the Gap in the area around the Property.

64.     TC demonstrated that the Gap exists around the Property and that the Proposed Tower would remedy the Gap.

65.     TC also submitted substantial evidence to the Township showing that TC investigated alternative sites around the Property, but none of the available alternative locations could remedy the Gap and comply with the Ordinance's requirements.

66.     Substantial evidence to rebut TC's evidence was not submitted to the Township or made a part of a written record, nor was permissible and substantial evidence cited by the Township in its decision denying TC's Application.

67.     Accordingly, the Township's denial of TC's Application violates 47 U.S.C. §332(c)(7)(B)(i)(II) as it is an actual or effective prohibition of the provision of wireless communication services to various consumer groups within the area covered by the Gap.

## COUNT III
## DENIAL OF SUBSTANTIVE DUE PROCESS UNDER THE FEDERAL CONSTITUTION

01886180.DOCX

68.     TC hereby incorporates by reference the foregoing paragraphs as though fully set forth herein.

69.     A substantial segment and percentage of the population of the Township, the State of Michigan, and the United States has a recognized and demonstrated need for the facilities and services provided by TC and wireless carriers as such facilities and services contribute to the right of an individual to engage in the common occupations of life, a liberty interest protected under the United States Constitution.

70.     The Property is a reasonable, minimally intrusive, and lawful location for the Proposed Tower that would serve to remedy the Gap.

71.     TC had a legitimate expectation, lawful entitlement and protected property interest that the Township would approve TC's Application under the Act once TC established: (a) its Application met all requirements of the Act and the Township's Ordinance, (b) a significant Gap in service coverage exists around the Property, and (c) a good faith, but unsuccessful, inquiry into less-intrusive alternative locations had been completed.

72.     No reasonable or rational governmental interest is advanced by the Township's denial of TC's Application and same is both arbitrary and capricious.

01886180.DOCX

73.     The Township's denial of TC's Application constitutes a violation of TC's right to substantive due process as set forth in the Fifth and Fourteenth Amendments to the United States Constitution.

74.     The Township's denial of TC's Application restricts TC's lawful use of the Property, as permitted by the Ground Lease Agreement, in violation of the United States Constitution.

75.     The Township's denial of TC's Application has resulted in the deprivation of TC's constitutionally protected property and liberty interests in violation of the due process clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States.

**PRAYER FOR RELIEF**
**WITH RESPECT TO COUNTS I THROUGH III**

WHEREFORE, Plaintiff TC prays that this Honorable Court decide this matter on an expedited basis pursuant to 47 U.S.C. §332(c)(7)(B)(v) and enter final judgment in their favor and against the Township providing for the following relief:

A.     Compel the Township by affirmative injunction to grant approval of TC's Application and to approve the proposed wireless carriers for co-location on the Proposed Tower;

01886180.DOCX

B.   Compel the Township by affirmative injunction to issue all permits and approvals necessary for TC to construct and operate the Proposed Tower on the Property as proposed by TC in its Application;

C.   Enter an injunction preventing the Township from interfering with TC's use of the Property for the Proposed Tower as set forth in TC's Application;

D.   Declare that the Township's denial of TC's Application was not supported by substantial evidence in a written record as required by the Act;

E.   Declare that the Township violated the Act by denying the Application;

F.   Declare that Township's wireless communications Ordinance, on its face and/or in its application to TC, violates the Act by effectively prohibiting the provision of personal wireless services in the area of the Gap;

G.   Declare that the Township violated the Federal Constitution by denying TC's Application;

H.   Award reasonable attorney fees, costs, and expenses allowed by law, including but not limited to those specifically provided for by 42 U.S.C. §1983 and §1988;

I.      Such other and further relief as this Court deems just and proper.


WILLIAMS, WILLIAMS, RATTNER & PLUNKETT, P.C.

/s/ *Richard E. Rassel*
Robert A LaBelle (P38310)
Richard E. Rassel (P57540)
*Counsel for Plaintiffs*
380 N. Old Woodward, Suite 300
Birmingham, MI  48009
(248) 642-0333
ral@wwrplaw.com
rer@wwrplaw.com

Dated:  August 6, 2024

01886180.DOCX